## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WESLEY DEWAYNE PIERCE**                                     **CIVIL ACTION**

**VERSUS**                                                              **NO. 22-5274**

**DEPUTY G. PETERSON, ET AL.**                              **SECTION: "J"(1)**

## REPORT AND RECOMMENDATION

Plaintiff, Wesley Dewayne Pierce, a state inmate, filed this federal civil action pursuant to 42 U.S.C. § 1983.  He sued Sheriff Randy Smith, Deputy Gabriel Peterson, Deputy Thomas Christman, Deputy Joshua Lujan, Deputy Russell Spinks, Sergeant Stephen Lucia, Detective Robert Ardeneaux, Jr., Warden Daniel Fleischman, Assistant Warden Rhonda Simmons, Dr. Jose Ham, and District Attorney Warren Montgomery.

In his complaint, plaintiff's allegations, verbatim and with no corrections of errors, were as follows:

> On July 24th, 2022, while I was on the phone at the St. Tammany Parish Jail, I was approached from behind by deputy Peterson.  At that time, I did not know that deputy Peterson was an officer due to my back being turned and having no knowledge of any officers being present in the living quarters.  Deputy Peterson reached over my shoulder at which point I paniced and turned slightly and shoved deputy Peterson because I believed he was another detainee.  Deputy Peterson began punching me in the face, and because I then noticed his blue shirt indicating that he was an officer, I did not resist.  Yet, deputy Peterson continued punching me in the face.  After deputy Peterson placed me on my stomach, he continued punching me.  Other officers then entered the living quarters where I was placed in handcuffs, and seperated from deputy Peterson.  Corparol Christman, deputy Lujuan, and several other officers whom I cannot identify then walked me to a "cool-bench" where I placed in yet a second pair of handcuffs attached to a chain connected to said "bench", while still in the first handcuffs, behind my back.  While corparal Christman, deputy Lujuan, and the other unknown officers were present, deputy Peterson began walking my way aggressively, stating that I had "grabbed his balls".  Do to this being a lie, and because of the manner in which deputy Peterson was approaching me, I kicked out my leg in an attempt to deter deputy Peterson from attacking me further.  However, deputy Peterson punched me several more times in the face.  Sargeant Spinks was several feet away observing the incident, but did nothing.  My eye and face were swollen do to the attack by deputy

Peterson and I had severe pain when I moved my eyes, but I was not transported to a hospital, even though deputy Peterson was transported to a hospital. I did not receive even an "Ice-Pack". I was told by doctor Jose Ham following X-Rays on 7-28-22 that there were no fractures. Yet on 8-19-22, while being seen by the psychiatrist, I was told that my cheek was indeed broken. Then, on 11-21-22, I was told by the doctor at University Medical Center that my cheek was broken and that I would be having surgery on my jaw for an injury that could have been caused by the attack by deputy Peterson. The doctor wrote me orders/recommendations for Gobbopentyn and Ibuprofen, yet the jail staff did not give me neither. I was seen by detectives Lucia and Ardeneaux on 7-28-22, when they informed me that they did have the video footage of both incidents and would be reviewing it later that day.

On 9-6-22, Sheriff Randall Smith acknowledged knowledge of the incidents and the video footage, but said they were justified. On 9-27-22, I notified district attorney Warren Montgomery via Mail about the incidents, my injuries, and the fact that there was video footage, and he has failed to do his civil duty and investigate and/or bring charges against deputy Peterson and any guilty parties/persons. In fact, Mr. Montgomery's subordinates have withheld the video footage from my public defender in a seperate criminal matter.[1]

## I.  Defendants' Motions

### A.  Defendants Smith, Peterson, Christman, Lujan,
### Spinks, Lucia, Ardeneaux, Fleischman, and Simmons

Defendants Smith, Peterson, Christman, Lujan, Spinks, Lucia, Ardeneaux, Fleischman, and Simmons have filed a motion for summary judgment.[2]  Plaintiff opposed the motion.[3]

Regarding such motions, the United States Fifth Circuit Court of Appeals has explained:

> Summary judgment can be granted only where, with the evidence before the court, the "movant shows that there is no genuine dispute as to any material fact

---

[1] Rec. Doc. 5, pp. 6-8.

[2] Rec. Doc. 18.  The defendants styled their motion as a "Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or Motion for Summary Judgment."  Because they presented evidence outside the pleadings in support of their motion, and because the undersigned will allow and consider that evidence in this Report and Recommendation, the motion is analyzed herein as one for summary judgment.  See Petrie v. City of Grapevine, 904 F. Supp. 2d 569, 575 n.2 (N.D. Tex. 2012) ("Although Defendants refer to their motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and, 'in the alternative,' as a motion for summary judgment under Rule 56, they rely extensively on evidence outside the pleadings.  Therefore, the Court construes Defendants' motion as one for summary judgment.  Defendants' alternative designation of their motion as one for summary judgment was sufficient to provide notice to Plaintiff of the nature of the motion." (citations omitted)), aff'd, 546 F. App'x 466 (5th Cir. 2013); see also Brewer v. Hayne, Civ. Action No. 3:13-cv-898, 2015 WL 13544751, at *11 (S.D. Miss. Apr. 16, 2015) ("When parties submit motions that request Rule 12(b)(6) relief or, in the alternative, summary judgment relief, the court, at its discretion, may address the entire motion as one for summary judgment."), aff'd, 860 F.3d 819 (5th Cir. 2017).

[3] Rec. Doc. 20.

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).
A fact is "material" when its resolution might affect the case's outcome under
governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct.
2505, 91 L.Ed.2d 202 (1986).  "A genuine dispute of material fact exists 'if the
evidence is such that a reasonable jury could return a verdict for the nonmoving
party.'"  Southern Ins. Co. v. Affiliated FM Ins. Co., 830 F.3d 337, 343 (5th Cir.
2016) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

   Although courts will "resolve factual controversies in favor of the
nonmoving party," an actual controversy exists only "when both parties have
submitted evidence of contradictory facts."  Little v. Liquid Air Corp., 37 F.3d
1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting from the opinion of the
district court, which the Fifth Circuit adopted in full).  "'If the evidence is merely
colorable, or is not significantly probative,' summary judgment is appropriate."
Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 517
(5th Cir. 2012) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

   There can be no genuine dispute as to a material fact where a party fails "to
make a showing sufficient to establish the existence of an element essential to that
party's case, and on which that party will bear the burden of proof at trial."  Celotex
Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "[A]
complete failure of proof concerning an essential element of the nonmoving party's
case necessarily renders all other facts immaterial."  Id. at 323, 106 S.Ct. 2548.
Speculative theories cannot defeat a motion for summary judgment.  See Little, 37
F.3d at 1077.

Guillot ex rel. T.A.G. v. Russell, 59 F.4th 743, 750 (5th Cir. 2023).

   Applying those guiding principles, the Court will now address the various defenses asserted

in the defendants' motion.

## 1.  Exhaustion of Administrative Remedies

   The defendants argue that plaintiff's claims against them must be dismissed because he

failed to exhaust his administrative remedies prior to filing this lawsuit.[4]  For the following

reasons, that argument should be rejected.

   It is true that the Prison Litigation Reform Act of 1995, as amended, provides that "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

---

[4] Rec. Doc. 18-1, pp. 14-16.

3

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  It is also true that federal courts have taken a strict approach to this requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," <u>id</u>. at 532.  The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001).  The United States Fifth Circuit Court of Appeals therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in <u>Booth</u>."  <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001).  Moreover, the Fifth Circuit emphatically held that the exhaustion requirement cannot be excused by a federal court, stating:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. …  District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.  It is irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

<u>Gonzalez v. Seal</u>, 702 F.3d 785, 788 (5th Cir. 2012) (footnote omitted).

It is also clear, however, that exhaustion is an affirmative defense on which the defendants bear the burden of proof.  <u>See, e.g.</u>, <u>Abbott v. Babin</u>, 587 F. App'x 116, 118 (5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted."); <u>Morgan v. Texas Department of Criminal Justice McConnell Unit</u>, 537 F. App'x 502, 508 (5th Cir. 2013); <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010).  Here, for the following reasons, the defendants have

not met their burden of proof to show that plaintiff failed to exhaust his administrative remedies with respect to the claims asserted against them.

In connection with their motion, the defendants submitted a copy of the jail's Administrative Remedy Procedure ("ARP").[5]  In pertinent part, the ARP states:

### STEP ONE – PROCEDURE

1. The offender starts the procedure by filling out the Offender Grievance Form.

2. Using this form, the offender tells what his/her complaint is, and what he/she thinks should be done.

3. The offender should keep a copy of his/her original completed from for his/her records.  The original grievance form will become a part of the procedure.

4. The grievance form must be completed and deposited in a collection box for delivery to the Warden or his/her designee within ninety (90) days of an alleged incident.

5. *Note:*  This requirement might not be enforced when events justify it; for example, if the offender was ill and unable to write.  The Warden or his/her designee will use his best judgment in such cases.

6. The form will be screened by the Warden and his/her designee and, if accepted, sent to the staff member who can best deal with the matter.  (For example, general security concerns will be given to the chief of security, food complaints to the kitchen supervisor, medical complaints to the medical director.)

7. This staff member will be known as the "Step One Respondent."

8. The grievance **may be** referred to the employee named in the complaint, if any.

9. In such a case, Step One will be an information-gathering step, not a decision-making step.  By giving the complaint directly to the employee named, it is hoped information as to how or why a certain action was taken will be found.

---

[5] Rec. Doc. 18-5.

If the offender has this information, he might better understand why events happened as they did and the grievance may be resolved.

The employee's response will be referred to his supervisor for review. If the supervisor feels that the response was inadequate or inappropriate for any reason, he will intervene.

The Warden or his/her designee will let the offender know if his grievance is being processed or if it was rejected.

The Step One Respondent will respond to the offender within fifteen (15) days from the date the completed Grievance Form is referred to him by the Warden or his/her designee.

## STEP TWO: WARDEN'S REVIEW

An offender who is not satisfied with the response at Step One may request a review by the Warden by signing the bottom of the Response to his Grievance. (Form 2)

The form must be deposited in the collection box within five (5) days of the offender's receipt of the Step One Response.

The Warden shall see to it that the offender gets his Review Decision of the Warden's Review Decision in writing within twenty-five (25) days after the Warden receives the request for Step Two review.

## STEP THREE – SHERIFF'S REVIEW

An offender who still is not satisfied with the results of the Step Two review may appeal to the Sheriff by signing the bottom of the Warden's Review Decision (Form 3).

Within five (5) days of the date of the offender's receipt, the offender must deposit Form 3 in the collection box.

A final decision will be made by the Sheriff or a person chosen by him who is not under the direct supervision or direct control of the facility.

The offender will be notified in writing (on Form 4) with forty (40) days after the Sheriff receives the appeal.

Any request for review of Steps Two or Three will be allowed without interference by administrators or employees of the facility.[6]

---

[6] Id. at pp. 9-11.

In support of their argument that plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit, the defendants provided records concerning a grievance plaintiff submitted on January 17, 2023.[7]  But there are two problems with that evidence.

First, that grievance concerned plaintiff's complaints regarding his **medical care**.  But the claims against these defendants (Smith, Peterson, Christman, Lujan, Spinks, Lucia, Ardeneaux, Fleischman, and Simmons) are not ones alleging inadequate medical care.   Therefore, the grievance provided is irrelevant to the question of whether plaintiff exhausted his administrative remedies **as to the claims against these defendants**.

Second, plaintiff alleged in his verified complaint that he exhausted his administrative remedies,[8] and the defendants have not shown otherwise by providing evidence that the foregoing grievance was the **only** grievance submitted by plaintiff.  Without such evidence, they simply have not established that plaintiff failed to submit **other** grievances which he then pursued through all steps of the ARP.

For those reasons alone, the defendants have not met their burden of proof on their exhaustion defense.

Moreover, it is clear that – at a minimum – plaintiff **did** exhaust his administrative remedies with respect to his excessive force claims against Peterson.  Proof of that fact was attached to plaintiff's federal complaint.  Those attachments show that he submitted a grievance on July 24, 2022, in which he stated:  "I was punched several times in my face by deputy Peterson while handcuffed and chained to the A-building bench.  I now have a bone sticking out of my cheek."[9]  The First Step Respondent denied relief, stating:

---

[7] Rec. Doc. 18-6.
[8] Rec. Doc. 5, p. 2.
[9] Id. at p. 11.

Mr. Pierce:

Per Assistant Warden Simmons:

After reviewing video and Dy. Peterson's report, it appears his actions were justified. The STPSO cannot relieve you of any charges, only a judge can. Submit a Request for Medical Services (sick call) for any injuries you may have.

This grievance is unfounded.[10]

Plaintiff then sought further review by the Warden, but the grievance was again denied at the Second Step. That Second Step Response stated:

Mr. Pierce:

In response to your request for a Warden's Review on 7/28/22. Video footage shows Dy. Peterson was justified. Again, STPSO cannot relieve you of your charges, only a judge can. You filled out a Request for Medical Services (sick call) on 7/28/22. On this same day, you had X-rays. On 7/31/22 you were triaged by a nurse, given the results of the X-rays and provided Ibuprofen. If you need to be seen by medical again, submit another Request for Medical Services (sick call).

This grievance is unfounded and considered closed.[11]

Plaintiff then appealed to the Sheriff, and the grievance was likewise denied at the Third Step.

That Third Step Response stated:

Mr. Pierce –

I am In-House Counsel for St. Tammany Parish Sheriff, Randy Smith ("Sheriff"), and in receipt of your Request for Sheriff's Review dated August 4, 2022. As the Sheriff's designated appointee, this written communication shall serve as the Sheriff's Review Decision to your Inmate Grievances submitted to Jail Administration on July 25, 2022. I have reviewed your Inmate Grievance, together with other documentation provided in this matter and provide the following response:

On July 24, 2022, your aggressive behavior towards a corrections deputy necessitated a use of force to end the incident and which resulted in an injury to your left cheek. The records reflect that you were evaluated by medical staff immediately following the subject incident and you were ordered 800 mg of Ibuprofen and facial x-rays. On July 28, 2022, you underwent radiology studies to

---

[10] Id. at p. 12.
[11] Id. at p. 13.

include multiple views, which revealed no evidence of fracture. Thereafter, on July 31, 2022, you were triaged by nursing staff and you were provided the x-ray results. Your request for a Sheriff's Review based upon your not receiving the x-ray results from July 28, 2022 is unfounded.

Regarding your allegation that Deputy Peterson "hit you and broke my eye socket while I was handcuffed to a bench", the evidence collected in this matter indicates otherwise. In fact, you were arrested for battery upon a police officer regarding the subject incident.

Based on the above factors, be advised that at this time, your Inmate Grievance is determined as unfounded and the matter is officially closed.[12]

Accordingly, two things are clear. First, plaintiff exhausted his administrative remedies with respect to his excessive force claims against Peterson. Second, the remaining defendants who joined in this motion (Smith, Christman, Lujan, Spinks, Lucia, Ardeneaux, Fleischman, and Simmons) have not met **their burden of proof** to establish that plaintiff failed to exhaust his administrative remedies with respect to his claims against them. Therefore, their exhaustion defense should be rejected.

## 2. Heck

The defendants also argue that plaintiff's excessive force claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).[13] For the following reasons, that defense should be accepted in part and rejected in part.

In <u>Heck</u>, the United States Supreme Court stated:

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, **or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid**, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983

---

[12] <u>Id.</u> at p. 14.
[13] Rec. Doc. 18-1, pp. 7-9.

suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (boldface emphasis added; footnote omitted).

The defendants argue that Heck bars plaintiff's excessive force claims because he pleaded guilty to a criminal offense based on the same underlying events.  It is true that "the Heck principle applies to § 1983 excessive force claims"; however, "the determination of whether such claims are barred is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction."  Bush v. Strain, 513 F.3d 492, 497 (5th Cir. 2008).  Therefore, in determining whether Heck bars a specific claim, a court must look to the nature of the underlying criminal offense and compare that to the claim asserted. See Ballard v. Burton, 444 F.3d 391, 401 (5th Cir. 2006).

Here, the defendants have produced a minute entry from the Louisiana Twenty-Second Judicial District Court showing that plaintiff pleaded guilty to the crime of battery of a police officer.[14]  Under Louisiana law, "[b]attery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another."  La. Rev. Stat. Ann. § 14:33.  The specific crime at issue here, battery of a police officer, is defined as follows:

A. (1) Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.
(2) For purposes of this Section, "police officer" shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, juvenile detention facility officers, federal law enforcement officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers.

---

[14] Rec. Doc. 18-4.

(3) For purposes of this Section, "battery of a police officer" includes the use of force or violence upon the person of the police officer by throwing water or any other liquid, feces, urine, blood, saliva, or any form of human waste.

La. Rev. Stat. Ann. § 14:34.2(A).  Therefore, "[b]attery of a police officer has three elements:  the intentional use of force upon a police officer, without the consent of the officer, when the offender knows or should reasonably know that the victim is a police officer acting within the performance of his duty."  State v. Ceasar, 859 So. 2d 639, 643 (La. 2003).

To establish that plaintiff's guilty plea concerned the same underlying incidents on which his excessive force claims are premised, the defendants produced the related complaint arrest affidavit,[15] which stated:

> On July 28, 2022 at 0735 hours, Sergeant Lucia, who works in the Jail Investigations Unit, was notified of a battery on a peace officer had occurred in the St. Tammany Parish Jail.  Sergeant Lucia located a Use of Force Form in the investigations in box in the admin section of the jail, and learned the following:
>
> On July 24, 2022 at 1830 hours, Deputy Gabriel Peterson was concluding with feed up in the A-100 Tier.  Inmate Wesley Pierce had been placed on lockdown in is [sic] cell earlier for a disturbance he created.  As the Pod Deputy opened the cell door A105, to let inmate Kenneth Herbert out, Inmate Pierce exited also.  Inmate Pierce has been incarcerated multiple times since 2010, and knows the jail lockdown procedures.
>
> The Pod Deputy notified Deputy Peterson of Inmate Pierce exiting his cell, and needed to have him placed back inside his cell on lockdown.  Inmate [sic] Peterson reentered A100 and located Inmate Pierce using the phone.  Deputy Peterson approached Inmate Pierce and gave him verbal commands to hang up the phone and return to his cell.  Inmate Pierce heard the command, turned slightly, enough to make eye contact with Deputy Peterson, then turned back around and continued with his phone conversation.  Deputy Peterson attempted to hang up the phone and Inmate Pierce told him not to touch my phone.  Deputy Peterson told Inmate Pierce he needed to return to his cell due to being on lockdown.  Inmate Pierce suddenly dropped the phone, turned toward Deputy Peterson, aggressively lunged at Deputy Peterson, and head-butted Deputy Peterson in the process.  Although stunned, Deputy Peterson was able to defend himself from being taken down by Inmate Pierce.  Deputy Peterson gave verbal commands to Inmate Pierce to stop resisting, which he ignored.  Deputy Peterson was able to take down Inmate

---

[15] Such materials may be considered where, as here, they are necessary for a federal court to understand the factual basis of a state court conviction at issue.  See, e.g., Williams v. McDonough, No. 22-40281, 2023 WL 2733443, at *2 (5th Cir. Mar. 31, 2023) (relying on a probable cause affidavit for this purpose); Aucoin v. Cupil, 958 F.3d 379, 381 (5th Cir. 2020) (relying on prison disciplinary reports to "understand the basis of the underlying conviction").

Pierce, who continued to aggressively fight. Once Deputy Peterson had Inmate Pierce face down and on top trying to place handcuffs on, Inmate Pierce grabbed and squeezed Deputy Peterson genitals. Other deputies arrived in the dorm and were able to get Inmate Pierce handcuffed and removed from the dorm. It should be noted Deputy Peterson was wearing the bright blue polo shirt with sewn on badge and BDU pants. This incident lasted approximately 50 seconds.

Inmate Pierce was immediately taken out of the tier, and was secured to the bench via handcuffs. As Deputy Peterson was passing, Inmate Pierce kicked and struck the arm of Deputy Peterson. He was restrained even further to prevent him from initiating any further contact with deputies. A copy of the video surveillance has been entered into evidence as (D-1).

Deputy Peterson was later brought to the St. Tammany Parish Jail due to hitting his head on the tier wall, and genital pain while fighting with Inmate Pierce.

On July 28, 2022 at 1331 hours, Sergeant Lucia met with Inmate Wesley Pierce in the Jail Multi-Purpose Room. Sergeant Lucia read Inmate Pierce his rights per Miranda, which he acknowledged he understood and waived by providing his signatures. Inmate Pierce began talking about his previous charges and lawsuit. Sergeant Lucia advised Inmate Pierce the interview was regarding a fight he had with a Corrections Officer a few days ago. Inmate Pierce stated he was calling about money missing off his books, and thought another inmate was trying to get his PIN number. Inmate Pierce stated he started fighting with Deputy Peterson, once he was thrown on the ground, face down, he grabbed Deputy Peterson genitals. Inmate Pierce advised he kicked at Deputy Peterson in the hallway after he was restrained on the bench, and accused Deputy Peterson of punching him three more times in the face. Sergeant Lucia observed Inmate Pierce kick Deputy Peterson on the arm, but no one punched him after he was restrained. He was only further restrained. This interview was uploaded to evidence.com as (D-2). The Miranda Rights Form has been scaned [sic] as an attachment to this item number.

On July 28, 2022, Sergeant Lucia completed an arrest affidavit on Wesley Pierce for 14:34.2 – Battery of a Police Officer (felony) under case number 2022-007208. The affidavit was presented, via Cloud Gavel, to the Honorable Scott Gardner. Judge Gardner reviewed the affidavit and approved the warrant. The warrant was forwarded to the Criminal Records Division and assigned Warrant Number 434306 respectively. The warrant was entered into the Sheriff's Department computer system accordingly.

On July 28, 2022 at 1555 hours, Sergeant Lucia completed necessary paperwork and arrested Inmate Pierce on open warrant.

Case cleared by arrest.[16]

Based on Circuit precedent, it is clear that <u>Heck</u> bars the claim that Peterson used excessive force while **initially** subduing and restraining plaintiff. For example, in <u>Hudson v. Hughes</u>, 98

---

[16] Rec. Doc. 18-3, pp. 4-5.

F.3d 868 (5th Cir. 1996), the United States Fifth Circuit Court of Appeals expressly held that a Louisiana defendant convicted of battery on a police officer is barred by Heck from seeking damages for the alleged use of excessive force by that same officer based on the same incident. The Fifth Circuit reasoned:

> In Louisiana, self-defense is a justification defense to the crime of battery of an officer. See LSA-R.S. 14:19; Louisiana v. Blancaneaux, 535 So.2d 1341 (La.App. 1988) (discussing justification defense to battery of officer conviction). To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. Blancaneaux, 535 So.2d at 1342. Because self-defense is a justification defense to the crime of battery of an officer, [plaintiff's] claim that [the defendants] used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction. We conclude therefore that to the extent that [plaintiff] seeks to recover from [the defendants] for the defendants' alleged use of excessive force during his arrest, his section 1983 action may not proceed.

Id. at 873 (footnote omitted).

The same is true in the instant case. In connection with his charge of battery of a police officer, plaintiff could have elected to urge a defense that the force used was unreasonable considering the circumstances and that his physical response was therefore warranted. He did not raise such a defense in the state court proceedings, and Heck now bars him from doing so in this federal court in a civil rights lawsuit. See, e.g., Williams v. Lowe, Civ. Action No. 18-916, 2018 WL 8343815, at *2-3 (E.D. La. Aug. 24, 2018), adopted, 2019 WL 1199100 (E.D. La. Mar. 13, 2019).

That said, plaintiff does not allege that Peterson used excessive force during only the initial incident. Rather, plaintiff alleges that excessive force was also used a **second time after he was restrained** on the bench. Where, as here, a second use of force is "temporally and conceptually

distinct" from an earlier incident, the <u>Heck</u> bar does not necessarily encompass a claim based on the second incident.  <u>See</u> <u>Bush v. Strain</u>, 513 F.3d 492, 497-99 (5th Cir. 2008).  Moreover, although plaintiff does not dispute that he shoved Peterson during the first incident, he does dispute that he battered Peterson during the second incident.[17]  Therefore, at this point, this Court simply cannot say that plaintiff's guilty plea included any admission that he committed a battery of Peterson beyond the first incident.  As a result, his claim of excessive force during the second incident is not inherently at odds with the facts adjudicated adversely to him in the state criminal proceeding.  Accordingly, the Court should reject Peterson's argument that <u>Heck</u> bars plaintiff's excessive force claim based on the **second** incident.

### 3.  Failure to State a Claim

The defendants next argue that several of plaintiff's remaining claims should be dismissed because his allegations are insufficient to state a claim.[18]  For the following reasons, those arguments should be rejected in part and accepted in part.

As to defendant Peterson, it has already been determined that the claim based on the first use of force is <u>Heck</u>-barred but that the claim based on the second use of force is not.  Therefore, the Court must address the alternate argument proffered with respect to that second claim.  Specifically, Peterson argues that plaintiff's allegations are insufficient to state an excessive force claim.  That argument lacks merit.

---

[17] Although he conceded in the complaint that he "kicked out" at Peterson while restrained on the bench, his opposition clarifies that the kick "did not make contact with deputy Peterson."  <u>See</u> Rec. Doc. 20, p. 3.  Because plaintiff is proceeding without counsel in this matter, this Court must consider his "complaint under the less stringent standards applicable to *pro se* litigants."  <u>Howard v. King</u>, 707 F.2d 215, 220 (5th Cir. 1983).  Therefore, the Court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."  <u>Id.</u>  Therefore, because the allegations in plaintiff's opposition embellish the original complaint's averments, they may be considered when ruling on the defendant's motion.  <u>Id.</u>
[18] Rec. Doc. 18-1, pp. 9-14.

At the time of the incident, plaintiff was allegedly a pretrial detainee.[19]   As the United States Fifth Circuit Court of Appeal recently explained:

> "A pretrial detainee receives the protection of the Due Process Clause of the Fourteenth Amendment." Brothers v. Klevenhagen, 28 F.3d 452, 455-56 (5th Cir. 1994).   Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable. Kingsley v. Hendrickson, 576 U.S. 389, 396-97, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). Courts weigh the following factors to determine reasonableness:
>
> > the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.
>
> Id. at 397, 135 S.Ct. 2466.[FN 4]
>
> > [FN 4]  The Supreme Court explained that the factors governing the "objective reasonableness" of an officer's force for Fourteenth Amendment purposes are the same factors that apply in the Fourth Amendment context. See id. (citing Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).   The Supreme Court established the standard governing excessive force under the Fourth Amendment in Graham, 490 U.S. at 396-97, 109 S.Ct. 1865.   Consistent with that precedent, this court has treated the standards for Fourth and Fourteenth Amendment excessive force claims as interchangeable.   See, e.g., Timpa[ v. Dillard], 20 F.4th [1020,] 1029 [(5th Cir. 2021)] (quoting Kingsley in analysis of Fourth Amendment excessive-force claim); Cole v. Carson, 935 F.3d 444, 456 (5th Cir. 2019) (en banc) (same).
>
> "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).   "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S.Ct. 1865.   "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).   This court has made clear that force which is disproportionate to the need is unreasonable. Joseph on behalf of Est. of Joseph v. Bartlett, 981 F.3d 319, 324 (5th Cir. 2020).

---

[19] See Rec. Doc. 5, p. 3.

<u>Austin v. City of Pasadena</u>, 74 F.4th 312, 322-23 (5th Cir. 2023).

With respect to plaintiff's second claim of excessive force, plaintiff alleges in his verified complaint that Peterson "punched [him] several more times in the face" **after** plaintiff was chained to a bench and his hands were restrained behind his back with handcuffs.[20] On summary judgment, the Court must consider that competent summary evidence[21] in the light most favorable to the nonmovant (here, plaintiff) and draw all reasonable inferences in his favor. See, e.g., <u>Brown v. City of Houston</u>, 65 F.4th 774, 777 (5th Cir. 2023). When that is done, it is clear that plaintiff has stated an excessive force claim and that genuine disputes of material fact exist concerning, *inter alia*, the need and propriety of the force used, the severity of the security problem (if any) which still existed after plaintiff was restrained, and the threat (if any) that Peterson reasonably perceived from the restrained plaintiff. Moreover, if a trier of fact ultimately resolves the factual disputes in plaintiff's favor, it may well be that the force Peterson used was objectively unreasonable. See <u>Timpa</u>, 20 F.4th at 1034 ("Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable.").

As to Deputies Christman, Lujan, and Spinks, it is argued that the allegations against those defendants are also insufficient to state a claim. That argument should likewise be rejected for the following reasons.

Plaintiff asserts that Christman, Lujan, and Spinks failed to intervene to prevent Peterson's purported use of excessive force.[22] Regarding such claims, the United States Fifth Circuit Court of Appeals has explained:

---

[20] <u>Id.</u> at pp. 6-7.
[21] "Allegations in a verified complaint may serve as competent summary judgment evidence." <u>Stauffer v. Gearhart</u>, 741 F.3d 574, 581 (5th Cir. 2014).
[22] Rec. Doc. 5, pp. 6-7.

> "An officer is liable for failure to intervene when that officer:  (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act."  Joseph, 981 F.3d at 343.  We have held that officers have a reasonable opportunity to intervene if they are present at the scene and that they violate their duty to intervene if their conduct demonstrates they acquiesced to the unconstitutional conduct engaged in by others.  Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).  Hale is clearly established law that provides fair notice to officers of their duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others.  See Timpa, 20 F.4th at 1039 (applying Hale to bystander claims).

Austin, 74 F.4th at 331.

Here, plaintiff alleges in his verified complaint that Christman, Lujan, and Spinks simply stood by and watched without intervening as Peterson aggressively approached and repeatedly punched plaintiff as he was restrained on the bench.[23]  When those allegations are viewed in the light most favorable to plaintiff and all reasonable inferences are drawn in his favor, it is clear that he has stated failure-to-intervene claims against Christman, Lujan, and Spinks.

As to Sheriff Smith, Warden Fleischman, and Assistant Warden Simmons, it is similarly argued that the allegations against those defendants are likewise insufficient to state a claim.  For the following reasons, that argument has merit.

In plaintiff's complaint and his opposition, he makes clear that he is attempting to hold Smith, Fleischman, and Simmons responsible for failing to act on his complaints and for finding Peterson's use of force to be justified.  However, **even if** plaintiff's complaints were improperly handled and wrongly denied by these defendants, his claims against them still fail as a matter of law.  Specifically, the law is clear that an inmate simply has no constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his

---

[23] Id.

satisfaction.  Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

### 4.  Frivolity

Lastly, the Court notes that Sergeant Lucia and Detective Ardeneaux joined the instant motion; however, the specific claims against them are not discussed in the motion.  Nevertheless, even separate and apart from the motion, the claims against Lucia and Ardeneaux should be dismissed *sua sponte* pursuant to the Court's screening authority because they are frivolous for the following reasons.[24]

Although Lucia and Ardeneaux were listed in the complaint as defendants,[25] the only allegation made against them in the complaint is that they informed plaintiff that they had the video footage of Peterson's use of force and would review it.[26]  That, even if true, is not a constitutional violation.

Of course, it must be noted that plaintiff, in his opposition to the foregoing motion, clarifies that he is suing Lucia and Ardeneaux because they **ultimately took no action** against Peterson for his purported criminal acts against plaintiff.  Specifically, he alleges:  "Mr. Lucia and detective Ardeneaux both not only had access to, but were responsible for, watching the video of Mr.

---

[24] Plaintiff filed this federal civil action *in forma pauperis*.  Concerning such actions, federal law provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action … is frivolous …."  28 U.S.C. § 1915(e)(2)(B)(i).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A.  That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law similarly requires:  "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous …."  28 U.S.C. § 1915A(b)(1).

A complaint is frivolous "if it lacks an arguable basis in law or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

[25] Rec. Doc. 5, pp. 1 and 4.

[26] Id. at p. 7.

Peterson[']s actions and holding him responsible."[27]  But that, too, simply is not a constitutional violation.  See, e.g., Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) ("[Plaintiff] alleged that [defendant sheriff] refused to file criminal charges against the guards who beat him.  Contrary to [plaintiff's] contention, he does not have a constitutional right to have someone criminally prosecuted.").

## B.  Defendant Ham

Dr. Ham filed a motion to dismiss pursuant to Rule 12(b)(6), and he attached plaintiff's medical records to that motion.[28]  After determining that those medical records would likely facilitate disposition of the claims against Dr. Ham, the Court opted to allow the records, notified the parties that the motion was therefore being converted into one for summary judgment, gave Dr. Ham an opportunity to supplement his motion to present any other pertinent material if he desired to do so, and extended plaintiff's time to respond to the converted motion.  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").[29]  Dr. Ham opted not to supplement the motion.  Plaintiff filed a response opposing the motion.[30]

---

[27] Rec. Doc. 20, p. 3.

[28] Rec. Doc. 21.

[29] See Zantiz v. Seal, 602 F. App'x 154, 160-161 (5th Cir. 2015) (holding that prisoner's medical records could not be considered with respect to a motion to dismiss his claim alleging constitutionally deficient medical care; noting that "[e]vidence that is outside the pleadings cannot be considered for a motion to dismiss" unless the motion is converted to one for summary judgment); 5C Arthur R. Miller, Mary K. Kane & A. Benjamin Spencer, Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ("Once the district court decides to accept matters outside of the pleadings, the presence of the word 'must' [formerly 'shall'] in subdivision (d) of Rule 12 indicates that the judge must convert the motion to dismiss into one for summary judgment and that is what has been done in a vast array of cases, especially when the district court actually considers the contents of this material in deciding the motion." (footnote omitted)).

[30] Rec. Doc. 23.

Because the standards governing motions for summary judgment have already been summarized *supra*, those standards need not be repeated. Accordingly, the Court will simply proceed to a consideration of the merits of Dr. Ham's motion.

Plaintiff claims that Dr. Ham denied him constitutionally adequate medical care for his injuries after the use of force. Such a claim has two components. Specifically, "[t]he Fourteenth Amendment guarantees pretrial detainees a right not to have their **serious medical needs** met with **deliberate indifference** on the part of the confining officials." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (emphasis added; quotation marks omitted).[31]

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). In the instant motion, Dr. Ham does not challenge the seriousness of plaintiff's medical needs.

Dr. Ham does, however, expressly argue that he was not deliberately indifferent to those medical needs. For the following reasons, the Court finds that he is correct.

Regarding the deliberate indifference requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

---

[31] In the discussion of this medical claim, the Court cites to cases decided under both the Fourteenth and Eighth Amendment because the duty involved is identical regardless of whether the claim is asserted by a pretrial detainee or a convicted prisoner. See, e.g., Cleveland v. Bell, 938 F.3d 672, 676 (5th Cir. 2019).

<u>Domino v. Texas Department of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997); <u>see also</u> <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999).

In his motion, Dr. Ham first notes that the only allegation specifically made against him personally in the complaint is that he informed plaintiff that the results of the x-rays taken on July 28, 2022, revealed no evidence of a fracture.  Those x-rays, which were taken by Global Diagnostic Services, were evaluated by Dr. Robert (Ben) Roach.  Dr. Roach concluded that there was "[n]o radiographic evidence of an acute fracture."[32]  Dr. Ham therefore **accurately** reported the results to plaintiff.  Obviously, Dr. Ham cannot be guilty of deliberate indifference simply for accurately reporting results.

While plaintiff does not dispute that conclusion, he appears to suggest in his opposition that Dr. Ham should nevertheless have done **more** for him, such as ordering additional tests.[33]  He premises that argument on a caveat contained in the x-ray report which warned:  "Plain film radiographs are not sensitive for traumatic maxillofacial injuries.  If a radiographically occult facial fracture is clinically suspected, thin-section maxillofacial CT scanning is a more sensitive study for evaluation of maxillofacial trauma."[34]  Here, Dr. Ham did not order additional tests.

However, even if – in hindsight – it would have been better if Dr. Ham had ordered a CT scan or other diagnostic procedures, it does not necessarily follow that his failure to do so constituted **deliberate indifference**.  On the contrary, again, "deliberate indifference is an

---

[32] Rec. Doc. 21-2, pp. 1-2.
[33] Rec. Doc. 23, p. 1.
[34] Rec. Doc. 21-2, p. 1.

extremely high standard." Petzold v. Rostollan, 946 F.3d 242, 248-49 (5th Cir. 2019) (quotation marks omitted). To meet that standard, an inmate must first be able to prove "**objective** exposure to a substantial risk of serious harm." Id. at 249 (emphasis added; quotation marks omitted). Second, he must also be able to prove that the defendant had "**subjective** knowledge" of that substantial risk. Id. (emphasis added). And third, he must be able to prove that the official, "despite [his] actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment." Id. Anything less than actual knowledge of a substantial risk of harm simply does not constitute deliberate indifference. See Martin v. Seal, 510 F. App'x 309, 315 (5th Cir. 2022) (noting that a defendant's "fail[ure] to act reasonably ... is inadequate to support an inference of deliberate indifference"; also noting that negligence or "poor judgment" do not constitute deliberate indifference (quotation marks omitted)); see also Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference ....").

In the instant case, plaintiff has pointed to no evidence showing that Dr. Ham had **actual knowledge** that his failure to order a CT scan or other diagnostic procedures – after x-rays had revealed no fractures – posed a **substantial risk of harm**. Moreover, precedent clearly holds that "the question whether ... additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and that a medical decision not to order additional diagnostic techniques or forms of treatment does not alone constitute deliberate indifference to a medical risk. Estelle v. Gamble, 429 U.S. 97, 107 (1976); see also Romero v. Kail, 597 F. App'x 802, 803 (5th Cir. 2015) ("Neither [a plaintiff's] disagreement with the treatment he received nor his assertion that he should have undergone additional diagnostic testing gives rise to a claim of deliberate indifference.").

Further, to the extent that plaintiff may instead be suggesting merely that Dr. Ham **erred** in failing to order additional diagnostic tests, that suggestion is misplaced in a § 1983 action. Although such an error might conceivably constitute negligence or medical malpractice, claims based on those theories are not redressable under § 1983.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Gamble, 429 U.S. at 107; Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

The only other allegation in the complaint concerning plaintiff's medical care is that "the jail staff" did not follow the "orders/recommendations" for Gabapentin and Ibuprofen that an outside provider purportedly included in plaintiff's discharge paperwork.[35]  However, plaintiff does not specifically allege that Dr. Ham **personally** denied him those medications.  That omission is fatal to any attempt to hold Dr. Ham liable for the denial under § 1983.  Under that statute, a defendant is liable only for his own failures, not those of his subordinate staff.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations … if they had no personal involvement."); Thompkins

---

[35] Rec. Doc. 5, p. 7.

v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

Moreover, even if it was Dr. Ham himself who failed to follow the outside orders, plaintiff's claim would still fail, because "the failure to follow a course of treatment recommended by an outside doctor does not itself show deliberate indifference." Nelson v. Griffin, No. 5:16-CV-00049, 2018 WL 1250063, at *4 (E.D. Tex. Mar. 12, 2018), aff'd, 773 F. App'x 217 (5th Cir. 2019); accord Clifford v. Doe, 303 F. App'x 174, 175 (5th Cir. 2008) ("A doctor's failure to follow the advice of another doctor suggests nothing more than a difference in medical opinion. Further, the question whether additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. Therefore, the [jail] medical staff's failure to follow [an outside doctor's] recommended treatment plan did not constitute a deliberate indifference to his serious medical needs." (citations omitted)); Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999); Cooper v. Walker, No. 13-CV-3209, 2014 WL 3378664, at *2 (W.D. La. July 9, 2014), appeal dismissed, 605 F. App'x 437 (5th Cir. 2015).

In a later filing, plaintiff further "specif[ied] [his] claims against Dr. Ham."[36]  In addition to reiterating the allegations already discussed (using only x-rays for diagnosis and not prescribing the recommended medications), plaintiff added new allegations.  However, even if those new allegations are deemed to be amendments to plaintiff's original complaint,[37] they fare no better for the following reasons.

For example, plaintiff complains about the fact that he was not sent to the hospital after the use of force.  "However, a decision to treat an inmate at the jail rather than to send him to an outside medical provider does not, even despite his disagreement with that decision, evince

---

[36] Rec. Doc. 42.
[37] See supra note 17.

deliberate indifference." Bergeron v. Terrebonne Parish Sheriff's Department, Civ. Action No. 20-2144, 2021 WL 5042732, at *8 (E.D. La. July 12, 2021), adopted, 2021 WL 5039631 (E.D. La. Oct. 30, 2021); accord Russell v. Gusman, Civ. Action No. 10-1772, 2011 WL 2457925, at *4 (E.D. La. June 17, 2011) ("This Court notes that plaintiff disagreed in particular with the decision to treat him at the jail's medical department rather than to send him to the hospital. However, that disagreement does not make his claim actionable. ... Simply put, a decision as to whether an inmate should be treated in the jail medical department rather than by outside medical providers is a matter of professional medical judgment."); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *4 (E.D. La. Feb. 22, 2010) ("Once he was incarcerated, [plaintiff's] primary source of medical care became the prison medical department, and it was then up to the prison doctor to decide whether outside care was needed. Such decisions are based on the doctor's professional judgment, and, as such, generally are not second-guessed in a federal civil rights action.").

Plaintiff also complains that he was prescribed only Motrin rather than a stronger pain reliever. However, a doctor's medical decision as to what pain reliever is appropriate is a classic example of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense. See, e.g., Iruegas v. Poe, 374 F. App'x 513, 517 (5th Cir. 2010) (finding that the failure to prescribe stronger pain medication was not deliberate indifference).

Plaintiff further complains that he was prescribed Cymbalta, which resulted in him suffering from depression. However, that, too, fails to state a claim. "While prescribing incorrect treatments or treatments that cause serious side effects might amount to malpractice, this allegation, without a further showing of deliberate indifference to serious medical needs, does not

rise to the level of a constitutional violation." <u>Morgan v. Texas Department of Criminal Justice McConnell Unit</u>, 537 F. App'x 502, 507 (5th Cir. 2013) (footnote omitted).

And, lastly, plaintiff alleges that Dr. Ham did not respond to grievances submitted through the jail kiosk. However, as already explained supra, such allegations fail to state a claim because an inmate has no constitutional right to an adequate and effective grievance procedure. <u>Bonneville v. Basse</u>, 536 F. App'x 502, 503 (5th Cir. 2013); <u>Propes v. Mays</u>, 169 F. App'x 183, 184-85 (5th Cir. 2006); <u>Geiger v. Jowers</u>, 404 F.3d 371, 373-74 (5th Cir. 2005).

For all of these reasons, Dr. Ham's motion should be granted, and the claims against him should be dismissed.

## C. Defendant Montgomery

District Attorney Montgomery filed a motion to dismiss pursuant to Rule 12(b)(6).[38] However, because he had already filed an answer,[39] the parties were notified that the motion would be construed as one filed pursuant to Rule 12(c).[40] <u>See</u> <u>Young v. City of Houston</u>, 599 F. App'x 553, 554 (5th Cir. 2015); <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999). Plaintiff filed a response to the motion,[41] Montgomery filed a reply,[42] and plaintiff then filed a surresponse.[43]

The United States Fifth Circuit Court of Appeals has explained:

The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

---

[38] Rec. Doc. 24.
[39] Rec. Doc. 15.
[40] Rec. Doc. 27.
[41] Rec. Doc. 30.
[42] Rec. Doc. 35.
[43] Rec. Doc. 36.

Union Pacific Railroad Co. v. City of Palestine, 41 F.4th 696, 703 (5th Cir. 2022) (citations and quotation marks omitted), cert. denied, 143 S. Ct. 579 (2023).

In the instant case, plaintiff attempts to hold Montgomery liable for his failure to prosecute – or purportedly even investigate – anyone in connection with the aforementioned uses of force. In his motion, Montgomery counters that he is protected against any such claims by his absolute prosecutorial immunity.  He is correct.[44]

In Imbler v. Pachtman, 424 U.S. 409 (1976), the United States Supreme Court held:  "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."  Id. at 431.  That immunity applies equally where, as here, a plaintiff's claim challenges the prosecutor's **failure to prosecute** an individual:

> It is clear … that a district attorney's decision *not* to prosecute a specific individual for a specific crime is within the scope of his immunity. …  [T]he decision not to prosecute, even when motivated by reprehensible or abhorrent reasons, is protected by Imbler.

Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985); accord Quinn v. Roach, 326 F. App'x 280, 292 (5th Cir. 2009) ("The decision to file or not file criminal charges is protected

---

[44] Because Montgomery argues that he is entitled to dismissal based on his absolute prosecutorial immunity, and because that argument is supported by the precedent cited herein, the undersigned makes this recommendation for dismissal on that basis.  Nevertheless, it should be noted that an alternative basis would appear to be equally valid – namely, that plaintiff lacks standing even to assert such a claim against Montgomery.  See Lefebure v. D'Aquilla, 15 F.4th 650 (5th Cir. 2021), cert. denied, 142 U.S. 2732 (2022).  In Lefebure, the United States Fifth Circuit Court of Appeals held that a crime victim lacks standing to sue a district attorney for failing to investigate or prosecute her victimizer:

> Supreme Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution.  See Linda R.S. v. Richard D., 410 U.S. 614, 617-19, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).
> Under this established principle of standing, each of us has a legal interest in how *we* are treated by law enforcement – but not a legally cognizable interest in how *others* are treated by law enforcement.  So people accused of a crime have an obvious interest in being treated fairly by prosecutors.  And victims of crime have a strong interest in their own physical safety and protection.  But victims do not have standing based on whether *other* people – including their perpetrators – are investigated or prosecuted.

Id. at 652.

by prosecutorial immunity."); <u>Fields v. Soloff</u>, 920 F.2d 1114, 1119-20 (2nd Cir. 1990) ("Appellant asserts that [the] District Attorney ... unlawfully failed to prosecute official misconduct. Though such neglect may result in public criticism, professional discipline or, under extreme circumstances, criminal charges, civil damages under section 1983 are inappropriate. Since [the District Attorney's] failure to act was, in reality, a decision not to prosecute, we find him absolutely immune from suit." (citation omitted)).

The same is also true of a prosecutor's decision not to investigate alleged illegal conduct. <u>See</u> <u>Henzel v. Gerstein</u>, 608 F.2d 654, 657 (5th Cir. 1979) (upholding district court's finding that prosecutor's refusal to investigate complaints about the prison system fell within the scope of prosecutorial duties and prosecutor was therefore immune from Section 1983 damage liability); <u>see also</u> <u>O'Connor v. Nevada</u>, 686 F.2d 749 (9th Cir. 1982) (upholding a dismissal for absolute immunity where the plaintiff alleged a district attorney had willfully and negligently failed to investigate two criminal complaints).

Lastly, the Court notes that plaintiff also alleges that "Mr. Montgomery's subordinates" withheld evidence from plaintiff's counsel. That allegation does not support a viable claim against Montgomery for two reasons. First, as already explained *supra*, a supervisory official, such as Montgomery, cannot be held vicariously liable for the actions of his subordinates. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 667 (2009); <u>Sanchez v. Young County</u>, 866 F.3d 274, 281 (5th Cir. 2017); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987). Second, in any event, prosecutorial immunity protects a prosecutor against claims that he withheld evidence. <u>Cousin v. Small</u>, 325 F.3d 627, 635 (5th Cir. 2003) ("[Plaintiff] alleges that the prosecution suppressed significant exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). … Although these allegations, if true, would establish prosecutorial misconduct, the

suppression of exculpatory evidence is shielded by absolute immunity. … Wilful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocatory function."); accord Wooten v. Roach, 964 F.3d 395, 411 (5th Cir. 2020) ("[F]ailure to disclose exculpatory evidence is shielded by absolute immunity."); Truvia v. Julien, 187 F. App'x 346, 348 (5th Cir. 2006); Waldrop v. Bethancourt, Civ. Action No. 10-1962, 2010 WL 3312501, at *3 (E.D. La. July 21, 2010), adopted, 2010 WL 3312583 (E.D. La. Aug. 18, 2010).

For all of these reasons, Montgomery's motion should be granted, and the claims against him should be dismissed.

## II.  Plaintiff's Motion for Summary Judgment

Plaintiff has also filed his own motion for summary judgment.[45]  Dr. Ham filed a response in opposition,[46] as did defendants Smith, Peterson, Christman, Lujan, Spinks, Lucia, Ardeneaux, Fleischman, and Simmons.[47]  Plaintiff filed a reply.[48]

Plaintiff argues that he is entitled to summary judgment because Smith, Peterson, Christman, Lujan, Spinks, Lucia, Ardeneaux, Fleischman, and Simmons "failed to respond" in this matter.  But if plaintiff is referring to the fact that they had not filed an answer, the defendants correctly note that they were not yet required to do so in light of their pending "Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or Motion for Summary Judgment."  See Fed. R. Civ. P. 12(a)(4) ("Unless the court sets a different time, serving a motion under this rule alters [the time for serving a responsive pleading] as follows: ... if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within

---

[45] Rec. Doc. 37.
[46] Rec. Doc. 39.
[47] Rec. Doc. 40.
[48] Rec. Doc. 42.

14 days after notice of the court's action ...."); see also Bertaut v. Parish of Jefferson, Civ. Action No. 02-2104, 2002 WL 31528468 (E.D. La. Nov. 8, 2002) ("A defendant may file a motion to dismiss and await its disposition before filing an answer. See FED. R. CIV . P. 12(a)(4). Even the filing of a partial motion to dismiss extends the defendant's time to answer the entire complaint."). In fact, because plaintiff is a prisoner, the defendants were not required to file an answer **at all** until ordered to do so by the Court, and relief cannot be granted to a prisoner simply because no such answer was filed. See 42 U.S.C. § 1997e(g)(1) ("Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law. Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed.").

Moreover, in any event, for the reasons already explained, (1) defendants Smith, Fleischman, Simmons, Ham, and Montgomery are entitled to summary judgment in their favor on all claims asserted against them, (2) defendant Peterson is entitled to summary judgment in his favor with respect to the first claim of excessive force asserted against him, and (3) the claims against defendants Lucia and Ardeneaux should be dismissed as frivolous. As to the claims that should be allowed to proceed (the second excessive force claim against defendant Peterson and the failure-to-intervene claims against defendants Christman, Lujan, and Spinks), genuine disputes of material fact remain with respect to those claims for the reasons already explained, and summary judgment is therefore not warranted for any party on those claims.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the motion filed by Sheriff Randy Smith, Deputy Gabriel Peterson, Deputy Thomas Christman, Deputy Joshua Lujan, Deputy Russell Spinks,

Sergeant Stephen Lucia, Detective Robert Ardeneaux, Jr., Warden Daniel Fleischman, Assistant Warden Rhonda Simmons, Rec. Doc. 18, be **GRANTED IN PART AND DENIED IN PART**. Specifically, it is **RECOMMENDED** that the motion be **GRANTED** with respect to the following claims: (1) the first excessive force claim against Peterson and (2) the claims against Smith, Fleischman, and Simmons. It is **RECOMMENDED** that the first excessive force claim against Peterson be **DISMISSED WITH PREJUDICE** to its being asserted again until the <u>Heck</u> conditions are met,[49] and it is **RECOMMENDED** that the claims against Smith, Fleischman, and Simmons be **DISMISSED WITH PREJUDICE**. It is **RECOMMENDED** that the motion be **DENIED** in all other respects.

It is **FURTHER RECOMMENDED** that the claims against Sergeant Stephen Lucia and Detective Robert Ardeneaux, Jr., be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

It is **FURTHER RECOMMENDED** that the motion filed by Dr. Jose Ham, Rec. Doc. 21, be **GRANTED** and that the claims against him be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion filed by District Attorney Warren Montgomery, Rec. Doc. 24, be **GRANTED** and that the claims against him be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion for summary judgment filed by plaintiff, Rec. Doc. 37, be **DENIED**.

It is **FURTHER RECOMMENDED** that the second excessive force claim against Deputy Gabriel Peterson and that the failure-to-intervene claims against Deputy Thomas Christman,

---

[49] <u>See</u> <u>DeLeon v. City of Corpus Christi</u>, 488 F.3d 649, 657 (5th Cir. 2007) ("A preferred order of dismissal in <u>Heck</u> cases decrees, 'Plaintiff[']s claims are dismissed with prejudice to their being asserted again until the <u>Heck</u> conditions are met.'").

Deputy Joshua Lujan, and Deputy Russell Spinks be allowed to proceed and remain referred to the United States Magistrate judge pending further development.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___21st___ day of August, 2023.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

32